**Edna U. CAIN, Appellee,**

v.

**SECRETARY OF HEALTH, EDU-
CATION AND WELFARE,
Appellant.**

**No. 10997.**

United States Court of Appeals
Fourth Circuit.

Argued March 8, 1967.

Decided April 21, 1967.

J. F. Bishop, Atty., Dept. of Justice (Barefoot Sanders, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, and Terrell L. Glenn, U. S. Atty., on brief), for appellant.

Donald D. Aaron (Law, Kirkland, Aaron & Alley, and Winter & Winter, Columbia, S. C., on brief), for appellee.

Before WINTER and CRAVEN, Circuit Judges, and HARVEY, District Judge.

WINTER, Circuit Judge:

The Secretary of Health, Education and Welfare appeals from a decision reversing his denial of benefits to Mrs. Edna U. Cain ("claimant"). Mrs. Cain sought benefits for herself, as the purported widow of Allen Cain, Jr., the natural child of the former marriage, and her children by other fathers, as the purported stepchildren of the deceased wage earner. The Secretary determined that the claimant and the wage earner had been divorced and refused to give effect to an *ex parte* order of a South Carolina County court, which, over twenty months after the wage earner's death and after the denial of social security benefits to her and to her other children, purported to declare that claimant's divorce from the wage earner was void, because of certain asserted procedural defects. We reverse the district court's judgment and

direct it to affirm the Secretary's decision.

Allen Cain, Jr. married the claimant in South Carolina on March 22, 1958. At the time, Mr. Cain was in the army, and when he was transferred to Georgia and later to Kentucky, claimant continued her residence in South Carolina. On November 5, 1960, claimant filed a complaint for divorce in the Richland County Court, South Carolina. Service was made by publication on November 9, 16 and 23, 1960, and by mailing to Mr. Cain at his last known address. On February 6, 1961, a decree was entered in the County Court, reciting, *inter alia*, that the complaint was filed November 5, 1960, that publication and mailing had been made as required by law, and granting a decree of divorce *a vinculo matrimonii*.

Mr. Cain died on March 7, 1961, domiciled in Florida. Promptly thereafter, claimant filed an application for Mother's Insurance Benefits as a "former wife divorced," and for Children's Insurance Benefits for Donna Sue Cain (the natural legitimate child of the former marriage) and for four children of claimant by fathers other than the deceased, as step-children of the deceased. Her application was denied on the ground that, at the time of her former husband's death, she was divorced from him but not receiving at least one-half of her support from him, in accordance with a legally enforceable agreement or court order. 42 U.S.C.A. § 402(g) (1) (F) (i) (I). An award was made to Donna Sue Cain, but the claims on behalf of the remaining children were denied, because their relationship to the deceased as stepchildren had been terminated by the divorce. No appeal was taken from this determination.

On December 6, 1962, more than a year and three-quarters after the divorce decree, and nearly twenty-one months after Mr. Cain's death, claimant obtained an *ex parte* order from the Richland County Court purporting to set aside the divorce decree as "void *ab initio*." The petition which initiated the proceeding in which the decree was entered recited that Mr. Cain had been served with notice of the divorce action by publication, but alleged that the petition for decree of divorce had been prematurely filed and the final decree of divorce prematurely signed. The petition and affidavit did concede that the petition for divorce had been filed November 5, 1960, but asserted that the entry of the decree on February 6, 1961 was prior to "the ninety (90) day waiting period after service" required by S.C.Code (1962 Ed.), § 20–108. The order purporting to void the divorce decree did not recite notice to, or representation of, heirs of Mr. Cain, including his then four-year-old legitimate daughter.

The crux of the case is a determination of whether claimant and Mr. Cain were validly married on the date of the latter's death, and that determination depends upon whether the decree of December 6, 1962, purporting to void the previously entered decree of divorce was itself valid and required to be accepted by the Secretary.

Section 216(h) of the Social Security Act, 42 U.S.C.A. § 416(h), requires, as the test for determining whether a woman is a widow, reference to state law.[1] Succinctly stated, the Secretary is required to determine what the courts of the state in which the deceased was domiciled at the time of his death would find in regard to whether claimant and the wage earner were validly married at the time he died and to apply that determination. Here, Mr. Cain was domiciled in Florida. The parties agree, however, that Florida would look to the law of South Carolina to determine the efficacy of the voiding decree, and it is to the law

---

1. "42 U.S.C. 416(h):
 An applicant is the * * * widow * * * of [an] individual * * * if · * * * the courts of the state in which he was domiciled at the time of death * * * would find that such applicant and such insured individual were validly married * * * at the time he died. * * *"

of South Carolina that we turn our attention.

■■ The basis for entry of the voiding decree was that the divorce was granted prematurely. South Carolina law provides that a final decree may not be granted before three months after the "filing" of the complaint in the office of the Clerk of the Court. S.C.Code (1962 Ed.), § 20–108. Claimant, in the Richland County Court and before us, contended that "filing" did not occur until after expiration of the order of publication. We do not perceive that this is the law of South Carolina, because in order to obtain service by publication, an order for publication must be obtained, and before the order of publication, "filing" must first occur. S.C.Code (1962 Ed.), §§ 10–451 and 10–454 are clear that an order of publication may issue from the court "in which the cause is *pending*" and that "In all cases in which publication is made *the complaint must be first filed* and the summons, as published, must state the time and place of such filing." (emphasis supplied) In this case more than ninety days elapsed between November 5, 1960, when the complaint for divorce was filed, and February 6, 1961, when the decree of divorce was granted, so that it may be concluded that the original decree dissolving the marriage was not void for the alleged procedural defect.

■■ It was proper for the Secretary to make this determination of South Carolina law, notwithstanding the voiding decree of the Richland County Court. The Secretary was under no constitutional compulsion to give full faith and credit to the state court decree; he was only under a statutory compulsion to determine what "the courts" of South Carolina would find in regard to Mr. Cain's marital status at the time he died. "The courts" does not refer solely to an *ex parte* order of a trial court. Rather, § 416(h) contemplates that the Secretary determine the law of the state as it has been declared by the Supreme Court of the state. Where, as here, the Supreme Court has not had occasion to de-

clare the law, the Secretary may follow the opinion of a *nisi prius* court; but if he believes its decision to be in conflict with what the Supreme Court "would find" were the point presented to it, he may disregard that lower court's decision. Indeed, it is well-settled that the Secretary is not bound by *ex parte* decisions made in the state courts. Rocker v. Celebrezze, 358 F.2d 119 (2 Cir. 1966); Pitts v. Hamrick, 228 F.2d 486 (4 Cir. 1955); Ramsey v. United States, 61 F.2d 444 (5 Cir. 1932). The reason for this salutary rule is clear: if he should so limit his consideration of what is the law to that type of adjudication, he might well be under a statutory duty, if various trial courts in *ex parte* proceedings made mutually exclusive determinations, to apply conflicting rules in identical cases within the same state. In this respect, his mandate is similar to that of the federal courts under the *Erie* rule. King v. Order of United Commercial Travelers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948).

■ There is another basis on which the Secretary's determination should have been upheld. Again, we state the statutory duty of the Secretary was to determine what is the law of South Carolina. Our examination of the law of South Carolina persuades us that, on authority of Jannino v. Jannino, 234 S.C. 352, 108 S.E.2d 572 (1959), the courts of South Carolina would determine that claimant was barred by the equitable doctrine of laches from voiding the original divorce decree. The doctrine of laches is, of course, a matter of defense and was not raised or considered by the Richland County Court because it proceded *ex parte*.

In *Jannino* the Court held that a former wife who sought to establish herself as the widow of an intestate was precluded by laches from pursuing that claim. The decision was but an application of a doctrine widely recognized in other jurisdictions. The claimant in *Jannino* had obtained a divorce decree from the deceased in 1948. In 1954, three years after his death, she sought

to have the effect of that decree annulled by suing his second wife, individually and as administratrix of the husband's intestate estate, for a declaration that the claimant was the surviving widow. While the case did not directly involve the precise issue here, since there had been no judicial vacation of the divorce, the attitude with which the Court viewed the claim there is pertinent. In delineating the nature of the controversy, the Court made special notice of the fact that the claim was one simply for property rights, and not for the restitution of the marriage, saying:

> "We are not called upon in this controversy to reinstate a marriage. This action is one relating solely to property rights. The marriage between respondent and Jannino, with all its duties and obligations, has been terminated by his death. She is now asserting the former relation and invalidity of the decree of divorce solely for the purpose of obtaining his property." 108 S.E.2d 572, 575.

Later in its opinion, the Court added:

> "It is quite obvious in the instant case that respondent did not care to resume the duties and obligations of a wife for, with full knowledge of the facts which she now claims invalidate the divorce, she took no steps to set it aside until after the lips of Jannino had been closed by death. * * * The Master concluded that her action at this late date was prompted by the fact that the value of the small estate had been considerably enhanced. * * *" 108 S.E.2d 572, 576.

All of the essential elements, relied on in *Jannino* to warrant dismissal of the action for laches, are present in this case. Here, as there, the decree of divorce was not challenged until after the former spouse's death, at a time when resumption of the marriage was impossible. Here, as there, the sole motive for challenge was to acquire pecuniary gain.

Here, as there, acceptance of the challenge would be to prejudice the rights of others.[2] We can conclude only that the courts of South Carolina, in a proper adversary proceeding, would hold claimant barred by laches from asserting that she was the widow of Allen Cain, Jr.

Reversed.

---

2. Donna Sue Cain, the natural child of the marriage, received a monthly benefit of $65.90. If claimant and her children by other fathers are added to the benefit roles, Donna Sue's benefit will be reduced to $30.80 per month. 42 U.S.C.A. § 403.